JEFFERSON.
September, 1817.

Ohio
*v.*
Carman.

# OHIO vs. CARMAN.

An indictment for a nuisance upon an highway " from the township of S. towards," &c.
    is not supported by proof of a nuisance upon a highway within the township of S.
An highway is not established until a record thereof is made.
A record is a complete copy of all the proceedings, and of the final decision,

INDICTMENT for a Nuisance.

The indictment proceeded as follows:—"The grand jurors of the county aforesaid, on their oaths and affirmations, in the name and by the authority of the state of Ohio, do present, that on the first day of September, in the year of our Lord one thousand eight hundred and sixteen, there was, and yet is, a certain common highway, leading from the township of Steubenville in said county, towards Boyd's mill; in the county of Jefferson, used by and for all the good people of this state, with their horses, cattle, carriages and carts, to go and return, pass and repass, ride and labour, at their free will and pleasure. And that on the fifth day of September, in the year of our Lord 1816, at the township of Steubenville, in said county of Jefferson, Jehiel Carman, of said township, labourer, with force and arms a certain fence of rails of four rails in height, and at the length of ten feet, did erect and cause to be erected, at and upon part of said common highway, running past the plantation of Bezaleel Wells; and with like force and arms, did then and there suffer the said fence to be, continue, and remain, as a common nuisance, from the said fifth day of September, A. D. 1816, until the finding of this bill of indictment, whereby the said common highway was, during all that time, so much obstructed and stopped up, that the citizens of this state and others, during all that time were, and still are, hindered, detained, and obstructed, in passing and re-passing, to, upon, and along, the said common highway, there, to the great damage and common nuisance of all the good people of this state, in going, returning, passing, repassing, riding, and labouring, to the evil example," &c.

PLEA—not guilty.

ON the trial, HALLOCK, for the state, offered in evidence a Book from which he proposed reading to the jury the following entries,

viz. "Monday, 2d June 1806, commissioners met, to-wit, <span>JEFFERSON.</span>
Andrew Anderson, John Jackson, and Benj. M'Cleery. <span>September, 1817.</span>

"A petition was presented, praying for a road to be laid <span>Ohio</span>
out from the mouth of Long Lick run, through the lands <span>Carman.</span>
of Robert Hill and others, to intersect the road leading down
McMahon's run, to Steubenville a little above Bezaleel Wells' saw mill.

"The Commissioners grant the prayer of said petition, and appoint
John Miller, John Adams and John Ekey, viewers, and Daniel
M'Clure, surveyor, who are to meet at the place where said road is to
begin, on the 16th day of June instant; and, after being duly sworn,
shall proceed to lay out the same agreeably to the prayer of said peti-
tion, and return a draught thereof, together with their report, to the
commissioners, at their meeting on the first Monday of September
next."

"Monday, 1st September 1806—Commissioners met, to-wit, Andrew
Anderson, John Jackson, and Benj. M'Cleery.

"A draught of the survey of a road, beginning at the mouth of
Long Lick run, thence through the lands of Robert Hill, to intersect
the road leading down M'Mahon's run to Steubenville, a little above
Bez. Wells' saw mill, being returned and publicly read, on two differ-
ent days of the same meeting, and no objections being made thereto;
and the viewers having reported that said road, if opened, will be a
public convenience, the commissioners order, that said road be opened
thirty feet wide, and made in other respects convenient for the passage
of travellers; and also that the same be recorded as a public highway,
the corners and distances of which are as follows, to-wit: beginning,"
&c. The corners and distances were set down in words and figures,
signed by the viewers and surveyor—under which was entered—
"Recorded, 2d Sept. 1806."

WRIGHT, for the defendant, objected to the entries being read in
evidence to the jury. The averment, in the indictment, "that there
was, and yet is, a certain common highway," &c., can only be proven
by producing the record of the road; the book offered in evidence, is
not a book of record, but the journal of the commissioners; the
entries made in it, are of the various business transacted by them, and
the parts offered to be read, but short minutes of their proceedings;
beside, the highway described in the indictment, and the one men-
tioned in the entries offered, is altogether different,

HALLOCK, contra, stated, that he had enquired of the commissioners

ers, and they informed him that this was the only record they had ever made of roads; that, should it be decided that what is now offered, is not a record of a road within the meaning of the law, the consequence will be, that we have no established highway in the county.    •

PRESIDENT.—If this is to be received as a record of a road duly laid out and established, it is of a different road from the one mentioned in the indictment; the latter describes the road as "from the township of Steubenville, towards Boyd's mill," the former "beginning at the mouth of Long Lick run, thence through the lands of Robert Hill to intersect the road leading down M'Mahon's run to Steubenville, a little above Bez'l Wells' saw mill."—These are totally irreconcilable, even if there could be a road from a township to a place or towards a place (as Boyd's mill) within the same township. The mouth of Long Lick run, the lands of Robert Hill, and the road leading down M'Mahon's run, are all within the township of Steubenville. The indictment is for erecting a nuisance on an highway running *from* the township of Steubenville, and of course wholly without that township.

But this is not such record of a road as the law requires to be made; the statute in force at the time these proceedings were had before the commissioners, is in the 4th vol. of the statute laws, by *that*, section 2d, " every application for any road, shall be by petition, specifying particularly where such road begins, the remarkable places by which such road is intended to pass, if any, and where the same shall end, signed by at least twelve landholders of the county "—it is only on the petition of twelve landholders of the county, that the Commissioners can proceed to cause to be laid out and surveyed a public highway; it is analagous to a petition in Chancery, or a declaration at law; on such petition being presented to the commissioners, and on their being satisfied that legal notice had been given, they are to appoint viewers and a skilful surveyor, who "shall survey such road according to the view of said landholders or a majority of them, conspicuously marking the same throughout and truly noting the courses and distances thereof, and at every mile's end shall erect a monument expressing the number thereof, and shall protract the survey of said road, which, together with the proceedings of the said viewers, shall be certified respectively, and returned to said commissioners "—and if the commissioners are satisfied, that the proposed

road will be of public utility they shall "cause a record thereof to be made, which shall thenceforth be deemed a public highway"—any person's land may be taken for the use of the public, (on compensation being made,) for roads

and highways; the manner in which it may be taken and the amount of compensation adjusted, are fully provided for; but the transfer from the individual to the state is incomplete, until such transfer is recorded; the record, then, is the only evidence of title in the state; such transfer is not like a bargain and sale of land between two individuals, it is a compulsory change of possession, not the deed of a grantor to be expounded most strongly against him, but a matter of mere legal right to be expounded according to the letter.

There is no difficulty in determining what is a record in any case; a record of a deed is an exact copy of the deed, a record of a suit at law, or in Chancery, is a like copy of the whole proceedings in such suit. When, then, the law requires a record of the laying out and establishing of a road to be made, before it shall become a public highway, it requires that the whole proceedings shall be copied into a book prepared for that purpose, to remain as permanent evidence of the public right and title. As well might that be called the record of a suit at law, which should omit the pleadings, as these minutes can be called a record of the proceedings in laying out and establishing an highway, with the omission of the petition and plat of the road.

If such loose minutes are the only evidence we have of the laying out and establishing of highways, it is time a more correct course was adopted by the county commissioners: that they have neglected their duty is no reason why we should receive their journal for a record; the public interest requires that full and complete record evidence should be kept of their right to, and interest in, the highways; as there is no such evidence offered in this case, the indictment cannot be supported.

Verdict for defendant.

Judge ANDERSON declined giving an opinion, having been one of the county commissioners.